**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT CHARLES BREWER, | ) | |
| | ) | CASE NO. 4:11-CV-00081 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Robert Charles Brewer ("Brewer") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Brewer's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I.  Procedural History

On May 7, 2007, and June 11, 2007, Brewer filed applications for POD, DIB, and SSI alleging a disability onset date of May 26, 2006.  His applications were denied both initially and

upon reconsideration.  Brewer timely requested an administrative hearing.

On June 8, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Brewer, represented by counsel, and Brewer's sister testified.  Timothy E. Mahler testified as an impartial vocational expert ("VE").  On November 25, 2009, the ALJ found Brewer was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age fifty-four (54) at the time of his administrative hearing, Brewer is a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(d) & 416.963(d).  Brewer has high school education and past relevant work as a bulldozer operator and operating engineer.  (Tr. 22.)

### *Hearing Testimony*

At the hearing, Brewer testified to the following:

- He is unmarried, has no children, and lives alone in a low-income housing complex.  (Tr. 37.)

- He last worked in June of 2008.  (Tr. 38-39.)

- He graduated from high school, but has no vocational training.  (Tr. 39.)

- He worked as a heavy equipment operator for thirty-five years, and was terminated after wrecking a company vehicle.  He also received a concussion.  (Tr. 39, 41.)

- He listed his medical problems as memory loss, an inability to stay focused, and suffering two strokes.  (Tr. 41-42.)  After a second stroke, he began to experience dizziness, was forgetful, had trouble sleeping, and took three naps daily.  (Tr. 43-

2

44.)

- He sleeps no more than eight hours a night.  He can prepare his own breakfast, runs a sweeper, cleans up, and mops floors in his apartment.  His sister helps him with chores.  (Tr. 44.)

- His mother and sister help him with grocery shopping once a month because he cannot focus.  (Tr. 45.)

- He had no hobbies, but was attempting to golf again.  (Tr. 46.)

- He takes walks during the day, up to a quarter mile.  (Tr. 47.)

- He watches television, but does not read.  *Id.*

- He owns an automobile, and drives it a few times a month.  (Tr. 47, 51.)

- He does not socialize beyond visiting his mother and sister.  (Tr. 47.)

- He uses a walker whenever he gets out of bed to help him balance.  He has fallen in the past.  (Tr. 47.)

- He occasionally experiences numbness in his left leg when he stands up.  (Tr. 48.)

- He takes prescription drugs, but does not experience any side effects.  *Id.*

- He takes pills to help him sleep, but they are weak and ineffective.  Three times a week he sleeps very little.  (Tr. 48-49.)

- He has not attempted any work aside from equipment operation.  He has never spoken with a vocational counselor.  (Tr. 54.)

- His sister handles bill payments.  (Tr. 59.)

- He did some work at the low-income complex he lives at in lieu of payment until he qualified for welfare.  (Tr. 55-56, 60.)

Brewer's sister, Nancy Lynn Kidder, testified at the hearing as follows:

- She handles Brewer's bills, washes his laundry, cleans his apartment, and makes sure he has his medicine filled.  (Tr. 61.)  She pays his car insurance and phone bill out of her money.  (Tr. 62.)

- She believes Brewer is unable to work because he cannot concentrate.  (Tr. 64.)

3

- She has not seen him play on his computer since the stroke. (Tr. 65.)

The ALJ posed the following hypothetical question to the VE:

So I want you to assume for RFC number one that Mr. Brewer has the ability to exertionally perform light work as defined by the statute. That's occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour work day, sit with normal breaks for a total of about 6 hours in an 8 hour work day. For postural limits, please assume there should be no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and/or stairs, occasionally balance, stoop, kneel, crouch and/or crawl. For environmental limits, please assume that Mr. Brewer should avoid even moderate exposure to hazards, that being working around dangerous moving machinery, unprotected heights and that he should also avoid commercial driving which in a way is a repeat of working with dangerous moving machinery. I wanted to make that clear. For mental limits, please assume that Mr. Brewer is limited, but is able to perform simple and I'm going to define that as one to three step tasks that are routine and predictable performed in a low stress work environment and I'll define that as free from fast paced production or strict production quotas. He is able to also perform some multi step tasks if given a little bit of extra time to do them and he's also able to relate adequately on a superficial basis with both the public and/or coworkers.

(Tr. 72-73.)

The VE testified that such a person would be unable to perform Brewer's past relevant work. (Tr. 73-74.) However, the VE identified the following light, unskilled jobs that such a person could perform: labelers and markers, Dictionary of Occupational Titles ("DOT") 920.687-126 [300 jobs locally, 64,000 nationally]; laundry folders, DOT 369.687-018 [300 jobs locally, 48,000 nationally]; office cleaners, DOT 323.687-014 [1,100 jobs locally, 241,000 nationally]; and, hand packers, DOT 920.687-018 [600 jobs locally, 202,000 nationally]. (Tr. 73.)

The ALJ posed a second hypothetical question to the VE:

I want you to assume RFC number one in its entirety. I'm going to add, however, a new mental limitation. I heard testimony from Mr. Brewer that he was

4

accustomed to working essentially by himself with radio contact as his primary source of communication throughout the day. I want you to assume just for RFC number two he's still able to relate adequately on a superficial basis with the public and/or coworkers, but I'd like you to also add in RFC number two that work should primarily be isolated in the sense that he's working alone throughout the day preferably ... as opposed to doing tandem tasks or group projects, that kind of thing....  I should add he's still able to have contact with the public and/or co-workers as identified in RFC number one, but I just want to see if the jobs that you've identified in RFC number one might translate over if we add the isolation component in RFC number two?

(Tr. 74-75.)

The VE testified that the additional restrictions in the second hypothetical would have no impact on the jobs identified in response to the first hypothetical, as none of those jobs required team work.  (Tr. 75.)  The ALJ then inquired whether the addition of a sit/stand option to the second hypothetical would impact the jobs previously identified.  (Tr. 75.)   The VE responded that only the office cleaner position would be eliminated.  (Tr. 76.)  In response to a fourth question from the ALJ asking the VE to find Brewer's testimony fully credible, the VE testified that such a person would not be competitively employable.  (Tr. 76-77.)  In response to a question from Brewer's counsel, the VE testified that a person who was absent three times per month was unemployable.  (Tr. 77-78.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

5

continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Brewer was insured on his alleged disability onset date, June 11, 2007, and remained insured through the date of the ALJ's decision.  (Tr. 11.)  Therefore, in order to be entitled to POD and DIB, Brewer must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

---

[1]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ found Brewer established medically determinable, severe impairments, due to

"status post cerebrovascular accidents; carotid artery stenosis; hypertension; cognitive disorder,

not otherwise specified; amnestic disorder, not otherwise specified; and adjustment disorder."

However, his impairments, either singularly or in combination, did not meet or equal one listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Brewer was found incapable of performing his past work

activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited

range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a

framework and VE testimony to determine that Brewer is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v.

Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d

762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

### *Treating Physician Rule*

Brewer argues that the ALJ erred by ascribing "little weight" to the opinion of his treating physician, Mohinder Singh, M.D.  (ECF No. 12 at 12-16.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence

in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6ᵗʰ Cir. 2006) (*quoting* 20

C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent

with the other substantial evidence in the case record means only that the opinion is not entitled

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399 (6ᵗʰ Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9).  "If the

ALJ declines to give a treating source's opinion controlling weight, he must then balance the

following factors to determine what weight to give it: 'the length of the treatment relationship

and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and

specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931 (6ᵗʰ Cir. 2011) (*quoting*

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6ᵗʰ Cir. 2004); *Meece*, 192 Fed. App'x at 460-

61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally

entitled to more weight than other medical opinions.)

 Nonetheless, the opinion of a treating physician must be based on sufficient medical data,

and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431,

435 (6ᵗʰ Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6ᵗʰ Cir. 1993); *Blakley*, 581 F.3d at

406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a

treating source if it is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.")

(*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating

physician that a claimant is disabled, but may reject such determinations when good reasons are

identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6ᵗʰ Cir. 1984); *Duncan v.*

*Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On June 18, 2007, Dr. Singh, Brewer's treating physician, completed a Stroke Impairment Questionnaire, noting that Brewer had suffered cerebrovascular accidents on May 26, 2007, and on August 8, 2006. (Tr. 653.) Dr. Singh checked boxes indicating that Brewer could sit for 0-1 hours and stand for 0-1 hours during an eight-hour work day. (Tr. 656.) In addition, he believed Brewer could lift and carry 0-5 pounds occasionally, but never anything heavier. *Id.* Dr. Singh opined that Brewer's symptoms constantly interfered with his attention and concentration and that he was incapable of even "low stress" work. (Tr. 657.) On November 26, 2008, Dr. Singh completed a second Stroke Impairment Questionnaire in which he opined that Brewer could sit for 0-1 hours and stand for 2 hours during an eight-hour work day. (Tr. 788.) In addition, he believed Brewer could lift 5-10 pounds frequently and up to fifty pounds occasionally. *Id.* His ability to carry was the same, except that he could not carry over twenty pounds. *Id.* His opinion as to Brewer's ability to tolerate low stress work and the effect of his symptoms on attention and concentration remained unchanged. (Tr. 789.) Brewer asserts that the ALJ should

10

have given significant or controlling weight to these opinions.  The ALJ recognized that if the

aforementioned limitations were accepted, they would preclude Brewer from engaging in full

time work.  (Tr. 19.)  The ALJ, however, gave little weight to these opinions and explained as

follows:

> On January 4, 2007, Dr. Singh, the claimant's primary care physician, examined
> the claimant and reported that the claimant's muscle strength was 5/5 in all
> extremities and his memory skills, reasoning skills, and ability to solve multi-step
> computational problems had improved.  He reported that the claimant had
> displayed progress in all areas and planned to return to work.  Dr. Singh felt that
> returning to work was reasonable and cleared the claimant to return to work with
> no restrictions (Exhibit 10F).
>
> The claimant was admitted to the hospital on May 25, 2007, after his family was
> unable to arouse him.  The claimant was also reported to have lethargy and
> slurred speech.  A computed tomography scan of the brain was suspicious for
> evolving stroke but an MRI of the brain showed only an old stroke with right
> internal carotid artery stenosis with no evidence to suggest acute cerebral
> infarction.  Magnetic resonance angiography of the brain was also normal.
> Magnetic
> resonance angiography of the neck showed severe stenosis of the right internal
> carotid artery and less than 70 percent stenosis of left internal carotid artery.  The
> vertebral arteries were reported to be normal.  The claimant admitted that he had
> gone on a drinking binge, and the physician reported that alcohol intoxication was
> most likely the cause of all the symptoms.  The physician reported that the
> claimant's muscle strength was 5/5, his sensory examination was normal, and
> his gait was steady.  He reported that the claimant had recovered fully and
> returned to his baseline at the time of his discharge on May 28, 2007 (Exhibit
> 10F).  On May 31, 2007, the claimant underwent a right carotid endarterectomy to
> remove plaque.  No complications were reported (Exhibit 13F).
>
> A Doppler ultrasound of carotid and vertebral arteries on July 11, 2007, showed
> calcified artherosclerotic plaques on the left side which were not causing any
> appreciable stenosis of any of the arteries, patent vertebral arteries, and blood
> flow velocity values and ratios that were within normal limits (Exhibit 10F).
>
> Despite his earlier finding that the claimant was able to return to work with no
> restrictions, on June 18, 2007, Dr. Singh completed a stroke impairment
> questionnaire in which he reported that the claimant had symptoms of balance
> problems, vertigo/dizziness, loss of manual dexterity, weakness, unstable
> walking, difficulty remembering, confusion, depression, personality change,

11

difficulty solving problems, problems with judgment, double or blurred vision, speech
difficulties, fatigue, and difficulty concentrating.  He opined that the claimant
could occasionally lift and carry up to five pounds, sit for only one hour or less,
stand for only one hour or less, and was incapable of even low stress work
(Exhibit IIF).  The undersigned notes that this opinion is contradicted by Dr.
Singh's own treatment records and reports on April 13, 2007, April 20, 2007,
May 21, 2007, July 12, 2007, and September 6, 2007, that the claimant's muscle
strength was 5/5 in all extremities (Exhibits 10F, IIF, and 13F).

On November 26, 2008, Dr. Singh completed another stroke questionnaire in
which he opined that the claimant could frequently lift and carry five to ten
pounds, occasionally lift and carry 10 to 20 pounds, stand and walk for a total of
two hours during an eight hour workday, and sit for less than one hour during an
eight hour workday.  He identified the claimant's symptoms as balance problems,
vertigo/dizziness, poor coordination, loss of manual dexterity, weakness, slight
paralysis, unstable walking, falling spells, numbness and tingling, sensory
disturbance, fatigue, difficulty concentrating, headaches, difficulty remembering,
confusion, depression, emotional lability, personality change, difficulty solving
problems, problems with judgment, speech/communication difficulties, and
psychosis.  He opined that the claimant was probably permanently damaged due
to his stroke and might have disability for a lifetime (Exhibit 20F).  However, the
undersigned notes that Dr. Singh's own records do not contain complaints or
findings supporting these limitations (Exhibits 10F, I1F, and 13F).

The undersigned recognizes that, if accepted, these limitations would preclude the
performance of all full time work.  However, the undersigned respectfully does
not accept these limitations.  At the June 8, 2009 hearing, the claimant's
representative was asked if he could point to anything in Dr. Singh's records that
supported the limitations reported by Dr. Singh in the stroke questionnaires.  The
claimant's representative submitted a brief on June 16, 2009, in which he broadly
argued the following: that Dr. Singh's opinions were well supported by medically
acceptable clinical and laboratory diagnostic techniques, were not inconsistent
with the other substantial evidence in the case record, and should be given great,
if not controlling weight (Exhibit 12E).  However, the representative did not
discuss any of the opposing evidence that is significantly inconsistent with Dr.
Singh's opinion.  The undersigned finds that controlling weight (Social Security
Ruling 96-2p), or even great weight, cannot be given to this treating physician's
opinions on the ultimate issue reserved to the Commissioner (Social Security
Ruling
96-5p) as they are not supported by Dr. Singh's own records or the overall
medical evidence of record.  The undersigned finds that the overall medical
evidence of record supports a finding that the claimant had recovered from his
strokes within one year.  The undersigned gives little weight to Dr. Singh's

opinions.

(Tr. 18-19.)

Brewer asserts that ALJ failed to explain why Dr. Singh's functional limitations were not given controlling weight. (ECF No. 12 at 13.) This assertion, however, is inaccurate. The ALJ's lengthy analysis of Dr. Singh's opinion indicates that he found Dr. Singh's own treatment notes did not support the functional limitations ascribed to Brewer. The ALJ's finding is the equivalent of a finding that Dr. Singh's opinion was inconsistent with the other substantial evidence, specifically his own records. Brewer essentially argues that the ALJ used the opinions of non-examining sources to discredit or undermine Dr. Singh's opinion. *Id*. at 13-14. Certainly, permitting an ALJ to reject a treating physician's opinion solely on the basis that it is inconsistent with the opinion of a non-treating physician would effectively eviscerate the treating physician rule. However, the Court disagrees with Brewer's interpretation of the ALJ's opinion. While the inconsistency of Dr. Singh's opinion with those of the non-treating sources may have furnished an additional reason to accord his opinion little weight, it is clear that the primary reason for the ALJ's treatment of Dr. Singh was the internal inconsistency and disconnect between the findings rendered during treatment and the limitations set forth in the questionnaires.

Brewer disagrees with the ALJ's opinion that Dr. Singh's treatment notes were inconsistent with the functional limitations he found. (ECF No. 12 at 14.) He concludes that nothing in Dr. Singh's treatment notes contradicts the limitations found. The ALJ's opinion, however, identifies numerous inconsistencies. As just one example, the ALJ pointed out that in January of 2007, Dr. Singh opined that Brewer could return to work, a stark contrast from his

13

opinion just six months later. (Tr. 18-19, 547, 656-57.) However, simply because Brewer

proffers a different interpretation of Dr. Singh's treatment notes does not render the ALJ's

contrary conclusion unreasonable or untenable. Brewer argues that the ALJ improperly found

inconsistencies due to the absence of specific functional restrictions within Dr. Singh's treatment

notes. (ECF No. 12 at 14-15.) Citing case law from other districts, Brewer asserts that

physicians keep medical records for purposes of treatment and not in anticipation of litigation.

*Id*. Therefore, the absence of work-related functional limitations in treatment notes is not

irregular. *Id*. However, there is no indication that the absence of specific functional restrictions

is the rationale behind the ALJ's rejection of Dr. Singh's opinion. The opinion explicitly states

that "Dr. Singh's own records do not contain *complaints* or *findings* supporting these

limitations." (Tr. 19) (emphasis added).

     Finally, Brewer argues that even if Dr. Singh's opinion was not entitled to controlling

weight, the ALJ was still required to analyze Dr. Singh's opinion under the factors enumerated

in 20 C.F.R. § 404.1527(d). (ECF No. 12 at 14.) While conceding that Dr. Singh was not a

specialist, Brewer argues that every other factor supports giving significant deference to his

opinion of Brewer's functional limitations. *Id*. at 15. However, the ALJ found that Dr. Singh's

opinion regarding Brewer's functional impairments was not well supported, as the findings were

"not supported by Dr. Singh's own records or the overall medical evidence of record." (Tr. 19.)

Although the ALJ did not specifically discuss the length of Dr. Singh's treating relationship with

Brewer, the significance of that factor is greatly diminished where an opinion is found to be

unsupported by the same physician's treatment notes.

     As such, Brewer's first assignment of error is without merit.

14

*Credibility Determination*

Brewer argues that ALJ failed to consider all the factors in SSR 96-7p and did not articulate a basis for discrediting Brewer's subjective complaints.  (ECF No. 18-19.)

As an initial matter, an ALJ's credibility finding is entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). A claimant's subjective statements concerning her symptoms are not enough to establish disability.  *See* SSR 96-7p, Introduction.  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." *Id*.  If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record.  *Id*.

Though credibility determinations regarding a claimant's subjective complaints rest with the ALJ, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight."  SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms

15

of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")  To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  *See* SSR 96-7p, Purpose.  Beyond medical evidence, there are seven factors that the ALJ should consider.[2]

It is well established that an ALJ need not analyze all seven factors, but should show that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).  Here, the ALJ discussed Brewer's daily activities, the severity of the alleged symptoms, the treatment for the alleged symptoms, and the consistency of Brewer's statements.  The ALJ clearly identified several inconsistencies in Brewer's testimony.  While Brewer attempts to downplay these inconsistencies, it is not this Court's function to perform a *de novo* credibility determination.  The ALJ considered the applicable factors and offered a reasonable explanation for his finding that is supported by evidence of record.

Brewer also argues that the ALJ failed to at least minimally articulate the weight given to

---

[2] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

16

the testimony of Brewer's sister.[3]  (ECF No. 12 at 18-19.)  Pursuant to 20 C.F.R. §

404.1513(d)(4), the ALJ may also use evidence from "[o]ther non-medical sources (for example,

spouses, parents and other caregivers, *siblings*, other relatives, friends, neighbors, and clergy)"

to "show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work."

(Emphasis added).  In *Roark v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 148016, 53-55

(S.D. Ohio 2011), the court explained that "[t]he assessment of the credibility of lay witnesses,

as well as the weight to attribute to their testimony, is peculiarly within the judgment of the

ALJ."  The *Roark* court observed that lay testimony "must be given 'perceptible weight' [only]

where it is supported by medical evidence."  *Id*. (*citing Allison v. SSA*, No. 96-3261, 1997 U.S.

App. LEXIS 4483 (6th Cir. 1997)); *Lashley v. HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983)

("Perceptible weight must be given to lay testimony where ... it is fully supported by the reports

of the treating physicians."); *accord Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

Pursuant to SSR 06-3p, 2006 SSR LEXIS 5 (Aug. 9, 2006), an ALJ must "consider all relevant

evidence in the case record," which necessarily includes evidence from "other sources."

Nonetheless, "[SSR 06-3p] does not ... include an express requirement for a certain level of

analysis that must be included in the decision of the ALJ regarding the weight or credibility of

opinion evidence from 'other sources.'"  *Chambers v. Astrue*, 2011 U.S. Dist. LEXIS 143080 at

**28-29 (S.D. Ind., Dec. 13, 2011).

Here, the ALJ acknowledged the lay testimony statements of Brewer's sister, who opined

that he could not work because he could not concentrate or follow directions.  (Tr. 17.)  The ALJ

---

[3]  The Commissioner's brief is unresponsive to Brewer's argument that the ALJ failed to
sufficiently discuss his sister's testimony.

17

found that the testimony of Brewer's sister, along with the claimant, was not entirely credible as to the nature and extent of Brewer's impairments. (Tr. 21.) The ALJ was not required to give "perceptible weight" to the statements, as the ALJ's opinion as a whole found that Brewer's alleged limitations were not fully supported by the medical evidence of record. The testimony of Brewer's sister was rather brief and merely reiterated certain aspects of Brewer's own testimony. In a similar case from the Seventh Circuit, the court found no error where the testimony of a claimant's sibling "did not constitute a separate 'line of evidence' [but] [r]ather, it served strictly to reiterate, and thereby corroborate, [the claimant's] own testimony concerning his activities and limitations." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). This Court agrees with the rationale of the *Books* decision, which found that to the extent the ALJ determined the claimant's "testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence, he necessarily found [his sibling's] supporting testimony similarly not credible."

Therefore, the ALJ did not err by declining to address the testimony of Brewer's sister with greater specificity. As such, Brewer's second assignment of error is not well-taken.

### Hypothetical

Brewer argues that the Commissioner failed to meet his burden at Step Five of the sequential process, because the determination that he could perform a significant number of jobs in the economy was not supported by substantial evidence. (ECF No. 12 at 19-20.)

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical

18

question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Specifically, Brewer asserts the hypothetical was inaccurate because it failed to include the above discussed limitations found by Dr. Singh or the limitations described by Brewer and his sister. This argument merely rehashes the arguments already addressed and rejected in Brewer's first two assignments of error. An ALJ need not include limitations that were found to be unsupported by the evidence or not credible. Therefore, the ALJ did not err, and the VE's testimony – given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible – constituted substantial evidence capable of supporting the Step Five finding.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date: January 30, 2012.